LEWITTES & SONS, a Copartnership, Landlord, Respondent, *v.* HERMANN SPIELMANN et al., Individually and as Copartners Doing Business under the Name of HERMANN SPIELMANN & SON, Tenants, Appellants, and HERMANN SPIELMANN & SON, INC., Undertenant.

Supreme Court, Appellate Term, First Department, August 11, 1947.

*Albert Mintzer* for appellants.

*A. J. Asche* for respondent.

HAMMER, J. That monthly tenants are entitled to thirty days' notice required by section 232-a of the Real Property Law is not questioned. Cases supporting that view are good law but not applicable here. The sole question here involved is whether the tenants-appellants are tenants at will or by sufferance as they claim, or monthly tenants as now suggested, and therefore entitled to thirty days' notice under either section 228 or section 232-a of the Real Property Law.

The State emergency Commercial Rent Law (L. 1945, ch. 3, § 8, subds. [c], [d], as amd. by L. 1945, ch. 315, § 8, subds. [c], [d], as amd. by L. 1946, ch. 272, § 8, subds. [c], [d]) provides that so long as the tenant continues to pay the rent to which the landlord is entitled no tenant shall be removed notwithstanding that such tenant's lease or other rental agreement has expired or otherwise terminated, unless the landlord (among the exceptions under which his right to obtain possession and use of his property is accorded recognition) seeks in good faith to recover possession of the commercial space for his immediate and personal use for commercial purposes or being one who has acquired title to the building subsequent to the effective date of the act likewise seeks possession of the commercial space for his immediate and personal use for commercial purposes and has an equity in the property of not less than 25% of the purchase price and then not unless he shall possess an interest no less than 50% of the whole investment in the business he proposes to carry on in such space. The landlord here pleaded and proved the above and the lower court found for and awarded final order to the landlord.

The tenants claimed below and here that they are tenants at will or by sufferance and as such entitled to the thirty days' notice required by section 228 of the Real Property Law. The landlord's position below and here was that the tenancy was not at will or by sufferance and such notice was not required.

It is agreed by this court that the tenancy was not one at will or by sufferance. A tenancy at will is usually at the will of the landlord (*Post* v. *Post*, 14 Barb. 253, 258; *Sarsfield* v. *Healy*, 50 Barb. 245, 246), although it may be at the will of both parties (*Jackson* v. *Aldrich*, 13 Johns. 106, 109). A tenancy at sufferance arises where one comes into possession of lawful title other than by act of law and thereafter continues the occupancy without any right or title (35 C. J., Landlord and Tenant, § 370), as where a tenant after the expiration or determination of the tenancy holds over without the consent of his landlord and merely through the laches of the latter (35 C. J., Landlord

and Tenant, § 372). The facts in the case on appeal clearly do not constitute a tenancy at will or by sufferance. The decision below therefore would seem to be correct. However, the opinion is stated here, although such point was not made by counsel, that by virtue of paying the rent monthly in advance after the lease "expired" the tenants were monthly tenants so long as they chose to remain in possession and as such they were entitled to thirty days' notice under section 232-a of the Real Property Law and the giving thereof was a jurisdictional requirement to be pleaded and proved. It would seem unless it is kept constantly in mind that the law controlling upon both parties is the emergency Commercial Rent Law, error may arise by attempting to read into the emergency statute other provisions of law not incorporated therein by reference either directly or indirectly or included therein by necessary implication. In *Stern* v. *Equitable Trust Co.* (238 N. Y. 267, 269–270) construing the Emergency Rent Laws of 1920, it was said:

" The relation of landlord and tenant is always created by contract, express or implied, and will not be implied where the acts and conduct of the parties negative its existence. The rule that a tenant who holds over after the expiration of a definite term for a year or years may be treated by his landlord as a trespasser or as a tenant from year to year, subject to the conditions of the original lease, except as to duration and amount of rent, if the landlord has raised the rent, is based on the theory of an option implied in law, tendered by the tenant to the landlord which he is at liberty to accept or reject. (*Haynes* v. *Aldrich,* 133 N. Y. 287.) If the elements of offer and acceptance, express or implied, are absent, the relation of landlord and tenant does not exist.

" The primary, but not the only, purpose of the Emergency Rent Laws was to prevent the wholesale eviction of tenants who were willing to pay a reasonable rent but who could not agree with their landlords as to the amount to be paid. *By suspending possessory remedies under the lease, these laws extended, against the will of the landlord, the right of the tenant to remain in possession of the leased premises so long as he continued to pay* what the Laws style ' a reasonable rental ' or ' a reasonable rent or price for their use and occupation.' The tenant thus remains in possession, not by virtue of any agreement, express or implied, either as to duration of term or amount of rent, but by virtue of the compulsion which the law exerts on the landlord to allow him to remain.

" The tenant does not by remaining in possession tender an option to the landlord to put him out as a trespasser; neither does he tender an option to allow him to remain as a tenant for any renewed or definite term. The tenant does not offer to remain in possession of the premises. He insists upon doing so. The landlord does not accept his proposition. The law forces it upon him. The tenant does not offer any proposition to the landlord upon which the conventional relation of landlord and tenant, as to length of term and amount of rent, based on offer and acceptance, can be inferred. To this extent the landlord is optionless and the tenant stands on his statutory rights which become the measure of his term and of his liability." (Italics supplied.) (See, also, *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429.)

The New York Emergency Rent Laws of 1920 were the basic source for the Federal rent regulations of 1943 (8 Federal Register 1322; see for New York City Defense-Rental Area, 8 Federal Register 13914), and with the latter furnished the source materials for the New York rent control statutes of 1945.

What is apparently clear indication of the course to be pursued here is that subdivision (c) of section 1 of the Federal Regulation provides that the provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, except insofar as those provisions are inconsistent with the regulation. All other provisions remain in force. This seems to be the main difference between the old Emergency Rent Control Law and the later or more modern version. The landlord has no right to claim the term is extended against the desire of the tenant, but if the latter remains in occupancy by virtue of the statute the rental agreement remains in force with its contractual rights and contractual obligations except such as are inconsistent with the emergency law. Higher rent than the maximum is banned but not the obligation to pay the rent in the manner agreed upon in the written lease. While the provision of subdivision (c) of section 1 of the Federal regulation is not in that very language contained in the New York State emergency rent control statutes of 1945 or in the amendments thereof, language of similar import is set forth and provision made for modification of the amount of the rent reserved, and decisions have regarded the statutes as similarly implemented. It has been held that the rights and obligations of the parties under the lease are projected into and become part of the statutory tenancy, except where they are plainly inconsistent with the act. (*Barrow Realty Corp.* v. *Village Brewery Restau-*

*rant,* 272 App. Div. 262; *130 West 57 Corp.* v. *Hyman,* 188 Misc. 92, citing *Stern* v. *Equitable Trust Co.,* 238 N. Y. 267, *supra.*) In *1239 Madison Avenue Corporation* v. *Neuberger* (208 App. Div. 87) the Appellate Division asked and answered the question whether a " statutory " tenancy partakes of the nature of a tenancy from month to month requiring the thirty days' notice under section 232-a of the Real Property Law to terminate such tenancy. While the decision was in respect of the tenant's obligation to give such notice and held there was no such obligation, the question in respect of statutory tenancy under the Emergency Rent Laws of 1920 was answered as follows (p. 90) : " The statute does not provide that the tenant may remain only if he assumes the obligations imposed on a tenant from month to month, but permits him to stay without terms excepting that he pay the reasonable rent."

Considering the provisions of the State emergency rent control statutes in the light of the evils to be remedied and the purpose to be effected and with the guidance of the source materials from which the statutes were constructed the conclusion irresistibly follows that the provisions of the written lease here and the rental agreement in every other case remain in force pursuant to the terms thereof except such as are inconsistent with the emergency statute.

The lease here provides the annual rental shall be paid monthly in advance on the first day of each and every month. Obviously there is nothing inconsistent between that provision and any provision of the emergency statute. There is no claim that the rent reserved is in any way inconsistent with the emergency rent provided by the statute. The conclusion follows logically that what was paid as rent after the termination date named in the lease was the identical rent (even when modified as provided in the statute) paid in the identical manner required by the mutual desire of the landlord and the tenants and expressed by them in their free contract or agreement of lease. Reverting to the statute the provision is found (§ 8) : " So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any commercial space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, * * * unless " under certain stated exceptions of which one is established by the evidence here.

The question then naturally arises — what rent and in what manner? The statute is silent on the manner of payment. Under what compulsion if any was the tenant then required to

pay the rent monthly in advance? Certainly not by option or right of the landlord under the emergency statutes. The exercise by the landlord of any option was controlled and limited by the emergency statute for the emergency period designated in the statute.

The statute itself did not make provision for the manner of payment. The parties themselves by their free contract did. Their agreement in that respect was in no wise inconsistent with any provision but on the contrary in obvious harmony with the spirit of the enacted law. It follows that the written agreement controlled and was the obligation under which the rent was paid monthly in advance by the tenant to the landlord. (See *Schmidt* v. *Leary,* 184 Misc. 1039; *Goldman* v. *Feingold,* N. Y. L. J., Jan. 10, 1947, p. 129, col. 7; *Shelton Bldg. Corp.* v. *Baggett,* 188 Misc. 709; *Smith* v. *Littlefield,* 51 N. Y. 539.)

Restated, the effect of the emergency statute seems to be that when the tenant pays the rent in the manner and for the period prescribed in the lease, the landlord's possessory remedies including those available at the date of termination stated in the lease are suspended for such period. The suspension by payment of such rent can be continued up to but not beyond the date fixed by the control statute for termination of the emergency. The suspended remedies are available to the landlord who shows himself to be within the provided exceptions at the end of any such rent-paid period. At the end of the emergency period, the lessor landlord is reinstated fully in all his rights including those which were his on the termination date stated in the lease and to enforcement thereof by all the possessory remedies provided by common and statutory law.

The emergency control statute deals only with remedies and does not interfere with vested property and contract rights. (*Zajic* v. *Sikora Realty Corporation,* 252 App. Div. 343.) The Legislature has been most careful not to go so far in the emergency even for those directly affected by it as to curtail private property and contractual rights or remedies for their enforcement, to such an extent that the constitutional guarantees are violated or due process of law evaded.

In this connection Legislature and judges may well remember what was said by HOLMES, J., in *Block* v. *Hirsch* (256 U. S. 135, 156): " * * * as there comes a point at which the police power ceases and leaves only that of eminent domain, it may be conceded that regulations of the present sort pressed to a certain height might amount to a taking without due process of law. *Martin* v. *District of Columbia,* 205 U. S. 135, 139."

Other considerations also lend support to the opinion here expressed. The power of stay by the court granting final order to the landlord was drastically increased in the emergency statutes. The Commercial Rent Law which is under consideration here in section 8 provides as follows: " Where a final order has been entered in any proceeding to evict a tenant pursuant to the provisions of this section, the court shall have power to stay the issuance of a warrant for a period not to exceed six months, but not to extend beyond the emergency period as defined in section seventeen."

By chapter 822 of the Laws of 1947 the Legislature declared by an amendment to the Commercial Rent Law (§ 13) that " The provisions of this act, likewise, shall be inapplicable to any lease or rental agreement for commercial space for a term or terms aggregating not more than four months in any calendar year."

Finally, cases such as *Hecht Co.* v. *Kuerner* (188 Misc. 519) and *Tripodi* v. *Rudershausen* (186 Misc. 363) may not be regarded as authority on the question at issue here. In the former case the uncontested facts did include a thirty-day notice purportedly given under section 232-a of the Real Property Law. However, the point directly involved and decided was that any irregularities in service of notice to vacate and in respect of 25% equity under the emergency rent law did not require the vacation of a final order for the landlord granted on consent. In the latter case the tenant claimed to be a yearly tenant, but was held to be merely a monthly tenant to whom proper notice to vacate had not been given.

*Frankel* v. *Rost* (272 App. Div. 334), decided by the Appellate Division, First Department, June 12, 1947, cited in the opinion of Mr. Justice HECHT, involved an alleged violation of a " substantial obligation " in a lease. The final order there was reversed because of the landlords' failure to prove that they gave the tenant the required " written notice * * * that the violation cease ".

It seems appropriate also to observe that in this case there was no unfairness by the landlord-owner to the tenants, or swooping down as the tenant charged without proof. On April 27, 1946, by registered letter, the landlord informed the tenants of its desire for the space. On May 26, 1946, the landlord wrote requesting possession. On September 10, 1946, the landlord wrote again informing the tenants of its desire for and need of the space. As the tenants had two leases, each for part of the space, one expiring April 30, 1946, and the other on August 14,

1946, the facts belie the claim of a precipitate attempt at ousting and show reasonable consideration and fair dealing.

For the reasons stated it follows that the tenants are neither tenants at will or on sufferance entitled to thirty days' notice under section 228 of the Real Property Law, nor monthly tenants entitled to thirty days' notice under section 232-a of the Real Property Law. Accordingly, the final order for the landlord is affirmed, with leave to appeal to the Appellate Division.

The final order should be affirmed, with $25 costs, with leave to appeal to the Appellate Division.

EDER, J. (concurring). On this appeal the appellants' basic contention is that they are tenants at will and as such the landlord was required by the provisions of section 228 of the Real Property Law to give them thirty days' notice to remove from the premises. Landlord contends appellants are not tenants at will but statutory tenants and no notice was required to be served upon them.

A tenant at will is one who continues in possession after the expiration of the term with the permission and at the will of the landlord. Appellants do not occupy that position for they are in continued possession without the permission of the landlord and against its will. They continue in possession, nonetheless, by right of the statute, for so long as they desire, upon paying the proper rent, and hence are statutory tenants (L. 1945, ch. 3, § 8, as amd.; *Stern* v. *Equitable Trust Co.*, 238 N. Y. 267); except for the statute their status would be that of holdovers (*Stern* case, *supra*). Appellants are not tenants at will and section 228 is therefore without application.

The statute permits a statutory tenancy to be terminated by the landlord in the instances therein mentioned, one of them (the case here) being where the landlord seeks in good faith to recover the space for his immediate and personal use (§ 8, subd. [d]).

Upon the termination of the statutory tenancy the parties revert to the status they occupied prior to the enactment of the statute and each may invoke the rights and seek the remedies accordingly available to them. With the termination by the landlord of the statutory tenancy the status of the tenants herein was that of holdovers and the landlords were entitled to evict them as such as authorized by subdivision 1 of section 1410 of the Real Property Law.

Article 83 of the Civil Practice Act, relating to summary proceedings to recover possession of real property, has not been

abrogated by the emergency legislation; the latter has only suspended the operation of its provisions during the emergency period except as to the permissible cases of eviction mentioned in section 8 — as in the case at bar.

As holdovers appellants were not entitled to any particular period of notice to vacate the premises; mere demand by the landlord for possession, and refusal, entitled them to immediately institute summary proceedings to evict the holdovers. The court below properly granted a final order to the landlord.

For the reasons given, and to the extent indicated, I concur.

HECHT, J. (dissenting). Proceeding by owner-landlord to recover commercial space under subdivision (d) of section 8 of the emergency statute. Defense, that the appellants on the expiration of their written lease continued in possession as tenants at will paying their rent monthly, and the landlord failed to give a thirty-day notice. The petition further alleged a breach of the tenants' covenant not to sublet, but that claim was withdrawn on the trial.

Appellants are mistaken as to the character of their tenancy, for under the emergency statute there can be no tenancy at will; the law, not the landlord, controls so long as the tenant pays his rent. However, at the close of the case appellants moved to dismiss on the ground that proper notice under the Real Property Law and the Civil Practice Act had not been given, no reference being made to tenancies at will, and the mere fact that the tenants' attorney claims in his brief that appellants as tenants at will should have been served as a preliminary to this proceeding with a thirty-day notice is immaterial, the question being whether, at the time of the commencement of the proceeding appellants came within the statute (Real Property Law, § 232-a) providing that "No monthly tenant, or tenant from month to month, shall hereafter be removed from any lands or buildings in the city of New York on the grounds of holding over his term unless at least thirty days before the expiration of the term the landlord or his agent serve upon the tenant, in the same manner in which a precept in summary proceedings is now allowed to be served by law, a notice in writing to the effect that the landlord elects to terminate the tenancy and that unless the tenant removes from such premises on the day on which his term expires the landlord will commence summary proceedings under the statute to remove such tenant therefrom."

It appears that the tenants rented, under written leases, two rooms in the landlord's building, one lease expiring April 30,

1946, and the other August 14, 1946; that the new owners, the present landlords, obtained title April 30, 1946, and proof was given on the trial in support of the essential allegations of the petition as to the petitioner's interest and that in good faith they sought possession for their immediate and personal use.

After the expiration of the yearly tenancy in each instance the tenants remained in possession paying the rent monthly in advance and continued such payments down to December 31, 1946, a period of about eight months after purchase by the landlords. The precept herein was issued January 9, 1947, without prior statutory notice.

Subdivision (d) of section 8 of the emergency statute, pursuant to which the proceeding was brought, provides that nothing in said subdivision " shall authorize the dispossession of a tenant during the term of his lease by such landlord or such person unless by the terms of the lease the privilege is reserved to terminate the lease upon sale of the building or other rental area * * *.'' By virtue of the leases the tenants were yearly tenants paying the rent monthly in advance. Upon the expiration of the terms the landlord could have maintained summary proceedings without prior notice; it elected however to allow the tenants to remain in possession collecting the rent monthly in advance, thus changing the status of the tenants from yearly to monthly tenants in the city of New York within the meaning of section 232-a of the Real Property Law, so that in the absence of the preliminary thirty-day notice therein provided for the final order cannot be sustained (*Frankel* v. *Rost*, 272 App. Div. 334). Such result accords with the practice of this court (*Tripodi* v. *Rudershausen*, 186 Misc. 363; *Kohner* v. *Empire Doll Co.*, N. Y. L. J., June 14, 1946, p. 2364, col. 4). Incidentally it is notable that if a landlord, without emergency curb, desires to increase the rent of a monthly tenant in New York City he is required as a preliminary to serve a thirty-day notice of such desired increase (*Miller* v. *Lowe*, 86 N. Y. S. 16).

Regarding the effect of the McAdam Act — the original statute (L. 1882, ch. 303) providing for preliminary notice to monthly tenants in the city of New York — this court (*Rogan* v. *Weiss*, 115 Misc. 193, 194, opinion by LEHMAN, J.) said: " Prior to the enactment of that statute, a monthly tenant could be removed by the landlord at the expiration of the month without any previous notice, because a monthly tenancy is a tenancy for a definite period, and a tenant occupying premises for a definite period is compelled to quit the premises at the end of such period. The statute did not create a new kind of tenancy, and

the tenant has always had the right to remove from the premises at the expiration of his term, but it took away from the landlord the right to remove the tenant by summary proceedings or by re-entry obtained in any other way, unless he had previously given the required notice to the tenant. For practical purposes, if the tenant could not be removed from the premises without a previous notice, the statute had the same effect as if it had provided that unless the landlord gave previous notice to the tenant, the tenant had the option of automatically renewing his monthly tenancy at the expiration of the month by remaining in the premises. In other words, it compelled the landlord to accept the tenant as a holdover without any alternative of treating him as a trespasser."

Prior to the existing emergency such a tenant was a " statutory tenant " so far as notice is concerned. The landlord could not evict him for holding over the term in the absence of a thirty-day notice, notwithstanding the tenant could leave at any time without notice (*T. I. B. Corp.* v. *Repetto,* 174 Misc. 501, affd. 261 App. Div. 813), and certainly in the present emergency it was not the intention of the Legislature to abolish the rights of monthly or month-to-month tenants in the city of New York with respect to notice.

The decision of the Appellate Term, Second Department, in *Shelton Bldg. Corp.* v. *Baggett* (188 Misc. 709) cited in the opinion of Justice HAMMER is based on the theory of " projection " of a conditional limitation five-day notice, following breach of covenant, into, as the landlord in that case informed the tenant, a " month to month " tenancy. There is no breach of covenant here.

The final order should be reversed, with $30 costs, and petition dismissed, with costs, without prejudice to a new proceeding.

EDER, J., concurs with HAMMER, J.; HECHT, J., dissents in opinion.

Final order affirmed, etc.