BROADWAY-SHERIDAN ARMS, INC., Landlord, *v.* SCHUYLER PHILLIPS et al., Tenants, and " JOHN DOE " et al., Undertenants.

BROADWAY-SHERIDAN ARMS, INC., Landlord, *v.* SOPHIE BARRETT, Tenant, and " JOHN DOE " et al., Undertenants.

BROADWAY-SHERIDAN ARMS, INC., Landlord, *v.* AGNES NULTY, Tenant, and " JOHN DOE " et al., Undertenants.

Municipal Court of the City of New York, Borough of Manhattan, September 3, 1948.

*Alfred J. Conforti* for landlord.

*Harold S. Budner* for tenants.

WATSON, J. Because the facts in these three proceedings are identical, except for location of the several apartments involved, it was stipulated on the record that the proceedings be tried together and that the stenographer's minutes taken at this trial shall apply to all of them.

The proceedings are brought to remove the tenants from their apartments because of their use as single-room occupancy in violation of sections 82 and 248 of the Multiple Dwelling Law. The petitions allege notice to the landlord by the department of housing and buildings to discontinue use of the premises in that manner, the landlord's desire and election, under the terms of the leases, to comply with the demand of the department, service of notice upon the tenants to cease the unlawful occupancy, their failure to do so and the holding over by them without permission of the landlord after the time fixed in the notice for expiration of their term.

Certificates of eviction issued by the temporary city housing rent commission authorize initiation of these proceedings in this language: " for termination of the prime tenancy but not the removal of the prime tenant from the portion of the premises (if any) occupied by him for his own living quarters, nor the removal of any roomers or sub-tenants."

Each of the two-year leases involved in these proceedings embraces several apartments which were let specifically to be " occupied by Tenant's subtenants for furnished room dwelling purposes and for no other purpose " (lease, par. 2), and as more particularly outlined in paragraph 31, " The landlord hereby expressly authorizes the tenant to sublet furnished rooms or suites of rooms in the demised premises to individual roomers or families * * *."

At the time the building was purchased by the landlord in 1941, all of the apartments therein were arranged and occupied as furnished rooms or single-room occupancies and were so used by the landlord's predecessor in title. When vacancies of apartments occurred in the building this landlord induced some of the tenants to increase their leaseholds by acquiring other apartments for furnished rooms or single-room occupancies.

One of the several apartments leased to the tenants, Schuyler Phillips and Lola Phillips, is actually occupied by them for their own living quarters. The rooms in the other apartments let to them are occupied as furnished rooms for dwelling purposes by persons who are either their roomers or subtenants. The furniture and furnishings are owned solely by these tenants who supply linens, maid service and other facilities customarily furnished occupancies of that nature. The same situation exists with respect to the tenants, Barrett and Nulty, respectively, except that Barrett does not occupy any one of the leased apartments for her own living quarters.

At the end of the leases on April 30, 1948, the tenants remained in possession by reason of subdivision (a) of section 209 of the Federal Housing and Rent Act of 1947 (as amd. by Public Law 464 [80th Cong., 2d Sess.], ch. 161, § 204, approved March 31, 1948; U. S. Code, tit. 50, Appendix, § 1899, subd. [a]), which provides: " No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless * * *." Then follow the enumerated exceptions.

Subdivision (b) of section 202 of said act (U. S. Code, tit. 50, Appendix, § 1892) defines the term "housing accommodations" as "real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, rooming- or boarding-house accommodations, and other properties used for living or dwelling purposes) together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property." It is not disputed that the premises involved are within the category defined as "controlled housing accommodations" in this section of the act, nor that they are located in a defense-rental area as provided in subdivision (c) of this section. (See Controlled Housing Rent Regulation in New York City Defense-Rental Area, § 1, subd. [b], subpar. [iii]; *112 East 36th St. Holding Corp.* v. *Daffos,* 273 App. Div. 447.) Unless the landlord establishes its right to possession under one of the several enumerated exceptions of subdivision (a) of section 209 of the act as amended, the tenants may not be removed from the demised premises.

None of these exceptions is alleged in the petitions nor is there any evidence to sustain the landlord's right to possession based on any one of them. The only ground on which removal of the tenants is sought is violation of the Multiple Dwelling Law referred to, which was not created or occasioned by the tenants.

It appears that the landlord has misinterpreted the language of clause (B) of paragraph (1) of subdivision (a) of section 209 which reads: "or using such housing accommodations for an * * * illegal purpose", to include use of the premises for single-room occupancy. While such occupancy may be deemed unlawful in the sense that it is prohibited by the Multiple Dwelling Law, it is not an illegal use within the intendment of clause (B) of paragraph (1) of subdivision (a) of section 209 of the act or within the contemplation of subdivision 5 of section 1410 of the Civil Practice Act, warranting removal of the tenants on this ground, for, as pronounced by the Appellate Term, First Department, in a similar proceeding (*Guaranty Trust Co.* v. *Nelson,* 189 Misc. 915, 917), "There is no occupancy for 'an immoral or illegal purpose' here. Further it is fair to assume that when these five or more apartments were let to the tenant Nelson a subleasing of the accommodations or units was within the contemplation of the parties, the subtenants or other occupants being thus brought within the protection of the regulation by the amendment of paragraph (1) of subdivision (c) of section 6."

There is a presumption that each department of government will do its duty (22 C. J., Evidence, § 69, pp. 130–134).

Summary proceedings may not be resorted to for every violation of the provisions of the Multiple Dwelling Law. In the event of unlawful occupancy of a multiple dwelling or any part thereof the department may cause such building or such part to be vacated (Multiple Dwelling Law, §§ 302–309) and in cases of prostitution resort to summary proceedings is expressly authorized (§§ 350–360).

The landlord has sought to spell out a termination of the tenants' term by virtue of paragraph 32 in the leases of Phillips and Barrett, numbered 33 in Nulty's lease. That paragraph reads: "The landlord agrees to comply, at its own expense, with any laws, orders and regulations of state, county, and municipal authorities relating to physical changes or installations necessitated by the furnished or single-room occupancy herein expressly permitted; but it is expressly agreed between the landlord and the tenant that, in the event the landlord is unable or unwilling to comply with such laws, orders and regulations, and the landlord is not permitted to continue the type of tenancy contemplated herein, the landlord may, at its option, elect to terminate this lease by giving written notice of such intention, of not less than six months from the date of mailing such notice, by ordinary mail addressed to tenant's last known address, and in such event, this lease shall be deemed terminated at the expiration of the time specified therein."

The notice of termination of the lease sent to the tenants in purported compliance with this covenant of the agreement, is dated November 24, 1947, and states: "Please be advised that your occupancy is in violation of the Multiple Dwelling Law. We are, therefore, asking you to remove said violation within ten days or eviction proceedings shall be started against you immediately." This was the only notice of termination sent to the tenants. It is contended by the tenants that this notice is wholly insufficient to bring the tenancy to an end. I am in agreement with this contention. The notice calls attention merely to the existence of the violation and threatens eviction proceedings after ten days should the tenants fail to remove the violation within that time. No time is fixed in the notice for expiration of the term, as required by paragraph 32 of the lease, which is a prerequisite to the commencement of these proceedings.

It is urged by the landlord that even though the notice be declared insufficient, the tenants were not entitled to notice of termination in view of the holding in *Lewittes & Sons* v. *Spiel-*

*mann* (190 Misc. 35). There it was held that the tenants as holdovers, were not entitled to any particular period of notice to vacate the premises; mere demand by the landlords for possession, and refusal, entitled them immediately to institute summary proceedings to evict the holdovers. The tenants contended that after their leases came to an end they became tenants at will or by sufferance and as such, were entitled to thirty days' notice under section 228 of the Real Property Law, or monthly tenants entitled to thirty days' notice under section 232-a of the Real Property Law. In the instant proceedings the facts regarding the holding over of the tenants are wholly dissimilar. Here, the parties of their own free will provided in their agreement a particular event, the happening of which would lay the foundation for terminating the tenancy, at the option of the landlord, upon the landlord giving to the tenants notice of a specified time when the term of their tenancy would come to an end according to the date fixed in the notice. They could not be holdovers until after the termination date fixed in the notice upon the happening of the event stated in the lease. The agreement of the parties in respect to the mode by which the term would expire was not inconsistent with any provision of the enacted law. This condition limiting the term of the tenants, like all of the other covenants and conditions of the lease not contrary to, or in conflict with, emergency regulations, was carried over from the original agreement into the statutory tenancy of these tenants (*Stern* v. *Equitable Trust Co.*, 238 N. Y. 267; *130 West 57 Corp.* v. *Hyman,* 188 Misc. 92; *Shelton Bldg. Corp.* v. *Baggett,* 188 Misc. 709). Therefore, the statutory tenancy of these tenants could not be terminated until compliance with this provision of the lease.

We turn now to the certificate of the temporary city housing rent commission. It grants permission to evict the prime tenant, except from the portion of the premises occupied by him for his own living quarters, but forbids eviction of the roomers or subtenants. A final order to such effect would be ineffectual to accomplish removal of the violation which is made the basis of these proceedings, for the reason that it is not the occupancy of the prime tenant that constitutes the violation; on the contrary, it is occupancy by the roomers and subtenants that constitutes the same. As stated before, all of the furniture and furnishings in the rooms of these roomers and subtenants are owned solely by the prime tenants, who supply the services ordinarily rendered to occupants of furnished rooms. Upon eviction of the prime tenants and not the individual roomers and subtenants,

the prime tenants would have the right to remove their furniture and furnishings from the occupied furnished rooms. In such situations, the roomers and subtenants would be evicted just as effectively as though they were embraced in the final order of eviction. Thus, the restriction imposed by the certificate of eviction against removal of the roomers and subtenants would be circumvented. The certificate is not an order for the eviction of these tenants, and has the effect only of permitting the landlord to seek the remedy of eviction in accordance with legislative standards and judicial criteria. The landlord's proof does not establish that it is entitled to eviction orders.

On the whole case, the tenants, as occupants of controlled housing accommodations, unaffected by any of the enumerated exceptions of subdivision (a) of section 209 of the Federal Housing and Rent Act of 1947, as amended, have established their right to continued occupancy of their apartments under the said act. '' It is the expressed intention of this law not to dispossess tenants in the situation of this defendant, who have equipped rooms and apartments with furniture and furnishings, and have sublet them as furnished apartments.'' (*112 East 36th St. Holding Corp.* v. *Daffos,* 273 App. Div. 447, 450, *supra.*)

The tenants and undertenants are entitled to a dismissal of the landlord's petitions on the merits.