H. CASABIANCA, INC., Landlord, *v.* JOHN CONNOBBIO et al., Tenants.

Municipal Court of the City of New York, Borough of Manhattan, April 28, 1952.

*Joseph F. Romano* for landlord.

*Marvin A. H. Freiman* for tenants.

SCHWEITZER, J. Proceedings by a petitioner landlord to recover possession of certain housing accommodations consisting of ten apartments located in two contiguous buildings at Nos. 302–304 East 59th Street, in the borough of Manhattan.

The petitioner, sometime prior to 1948, occupied business premises in the vicinity of the demised premises and, after having been required to vacate its premises, purchased these buildings in 1948. It subsequently sold the premises for $75,000 and took back a twenty-one year lease of both buildings at a stipulated rental. An application was filed with the department of housing and buildings to alter and remodel the premises and this application was accompanied by the necessary plans, together with a request for a certificate of occupancy. Extensive

alterations in conformance with these plans were made in order to permit the petitioner to occupy the street level portion for its business use. It was established that the cost of this renovating work was $47,129.37, of which sum $35,000 was expended primarily to put the street level premises in condition for the landlord to use it for its business use. The balance of the moneys was expended for other alterations affecting other portions of the buildings.

Since July of 1938, and for a period of at least ten years prior to the acquisition of these properties by the landlord, there has been a violation placed thereon by the department of housing and buildings because of the failure of the landlord to provide private toilets in conformance with the provisions of section 250 of the Multiple Dwelling Law. In addition to the violations which have persisted since 1938, a new set of violations was placed against the premises, which arose by reason of the landlord's failure to comply with the plans originally filed by it. These violations concerned the failure of the landlord to fire-retard the outer walls in all of the public hallways above the second floor; to install new bulkheads, and to install eight self-closing fireproof doors. There can be no dispute about the fact that this latter set of violations was the direct result of the landlord's alterations and its failure to comply with the plans regarding same.

The present proceeding is predicated upon the provisions of subdivision 3 of section 52 of State Rent and Eviction Regulations, which provides for the eviction of a tenant where " Occupancy of the housing accommodations by the tenant is illegal because of the requirements of law, and the landlord is subject to civil and criminal penalties therefor, or both." Prior to the commencement of these proceedings, the landlord, as a result of these violations, was convicted in the Magistrate's Court and fined $10. The petition failed to allege this statutory ground for eviction, and in view of the desire of both parties to secure a determination of the issues on the merits, the court has permitted the parties to enter into a stipulation amending each of the petitions *nunc pro tunc,* so as to have incorporated therein the aforesaid statutory grounds for eviction.

The court has no difficulty in making a summary disposition of any claim by the landlord predicated upon the post-1948 violations as a ground for eviction. As the landlord concedes in its brief, it alone created them and it would indeed be an anomalous situation to permit an offending landlord to benefit by its own unlawful acts. (*816–Fifth Ave.* v. *Purdy,* N. Y. L. J.,

Nov. 8, 1951, p. 1190, col. 3.) It was held therein that where the alleged illegal occupancy resulted from or was due to the affirmative acts of the landlord, such landlord may not utilize these acts or conditions as a basis of a claim for illegal occupancy. The court stated further that the landlord not only was empowered to remove the violations, but he had the burden and obligation to do so.

The remaining issue presented is whether or not the landlord may secure possession by virtue of the existence of the pre-1948 violations; that is, those pertaining to the failure of the landlord to provide private toilets for each apartment pursuant to the requirements of section 250 of the Multiple Dwelling Law.

The ground for eviction urged (State Rent and Eviction Regulations, § 52, subd. 3) is a comparatively new section and neither the reported decisions, nor the legislative reports, which preceded its enactment, reveal the purpose of the Legislature in enacting this amendment in March, 1951 (L. 1951, ch. 443). The court feels, however, that this section has a most important and salutary purpose in our law, designed to remedy the impact of certain judicial decisions which in effect prevent a landlord from securing possession of his premises and at the same time subject him to civil liability or criminal prosecution (*Guaranty Trust Co.* v. *Nelson,* 189 Misc. 915; *Broadway-Sheridan Arms* v. *Phillips,* 194 Misc. 35, affd. 194 Misc. 34; *Matter of Levine* v. *Finkelstein,* 274 App. Div. 628; *Sherbal* v. *Epstein,* 191 Misc. 543).

This legal dilemma was somewhat alleviated by the Appellate Division in *People* v. *Broadway-Sheridan Arms* (275 App. Div. 352, affd. 300 N. Y. 559).

The mere existence of a violation, however, in and of itself does not entitle the landlord to an order of dispossession under this amendment. It would appear that the court should render a landlord relief under this amendment in a situation where a violation exists and compliance therewith cannot be effected without the removal of the tenant. Similarly, relief should be afforded where the evidence establishes that the tenant created the conditions from which the violation arose. The court would invoke the provisions of this amendment to give a landlord relief in any event where it appears that compliance with the departmental directive would be economically improvident. Dispossession under any of the aforesaid situations appears to be consistent with the purposes of the Rent Laws. It thus becomes incumbent upon the court to examine the facts in the instant

case to determine whether or not the petitioner comes within the purview of the legislative intent, as herein outlined.

As has been noted, the landlord had full knowledge of the existence of these violations at the time that title was taken in 1948. In order to prepare the business portion of the premises, so that it could use it for that purpose, it filed plans designed to effect a cure of all of these violations, without which plans it would have been unable to occupy the business portion of the premises. The petitioner claims that to complete the alterations, insofar as the water closets are concerned, would entail an additional expenditure of $10,600, although testimony adduced on behalf of the tenants reduces this amount to approximately $8,375. The gross income from the housing accommodations amounts to $3,500 a year.

In the light of all of the facts adduced it would appear unconscionable to permit this landlord possession of these housing accommodations based upon its own derelictions in complying with the departmental directive against it. Substantial funds were available to remodel the business portion of the premises and the plea should not now be raised that it is unable to secure the funds to remove the violations, concededly not caused by any acts of these tenants. The testimony indicates further that the alterations are not unusual, or even substantial, and all can be readily effected without the removal of any tenant from any apartment.

The addition of these new toilet facilities would represent a new and additional service entitling the landlord to an increase in the maximum rent of each of the apartments affected. It is fair to presume that every department of government will do its duty and on appropriate application increases may be secured from each of these tenants, which would materially assist the landlord in recovering the cost of these toilet installations. (22 C. J., Evidence, § 69; 31 C. J. S., Evidence, § 146; State Rent and Eviction Regulations, § 33.)

The relief requested by the landlord, would, if granted, accomplish the withdrawal of the occupied housing accommodations from the rental market. The landlord's application for such relief must be directed to the Temporary State Housing Rent Commission for a certificate pursuant to such section, the Rent Commission could impose appropriate conditions for the withdrawal of such accommodations. This court does not have that power. One other factor, although not decisive, is of considerable importance in balancing the conflicting interests between the petitioner and the tenants. The violation involved

concerns itself with an element of convenience to the tenants. It constitutes no immediate hazard and bears no critical relationship to the health or safety of the occupants.

On the entire case, the denial of relief to the petitioner is consistent with the purposes for which the rent statute was enacted. Final order for the tenants, dismissing the petition on its merits.