FRANCES A. FINKELSTEIN, Landlord, *v.* LIZZIE FOLEY, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, September 14, 1953.

*Nathan Finkelstein* for landlord.

*Lizzie Foley,* tenant in person.

CHIMERA, J. This proceeding affects housing accommodations and the tenant appears without counsel. It appears from the record that the matter had been placed on the calendar once before and adjourned in order to give the landlord an opportunity to obtain a certified copy of a rent commission certificate attesting to her claim that the legal rental was $36.80 per month. On order of the Justice then presiding the tenant deposited the sum of $69 with the Clerk of the court presumably to cover the rental for the month beginning with the 15th day of July, 1953 (the only month sued for) and for the month of August following. The papers on file do not indicate whether the tenant protested. In any event it must be assumed that the deposit was made without prejudice to either party.

The pleadings reflect the shifting position of the landlord. The petition verified on the 10th day of August, 1953, claims nonpayment of $36.80 for the month of July and goes on to say that the rental was '' due and payable on the 15th day of October of said respective month, and that the total rent in arrears is $30.00.'' Add to this the language of a '' notice of maximum rent '' admittedly sent by the landlord to the tenant on or about April 10, 1953, in which the tenant is notified that her maximum rent as of May 1, 1953, '' is established at $34.50 per month '' and you have a situation where the court originally and even now would be justified in dismissing the proceeding without prejudice.

It would be simple to make such a decision and thus avoid the legal issues posed by the pleadings and the testimony of landlord's agent and attorney. Those issues are the '' burning '' questions of the day requiring clarification.

The tenant, it appears, was heretofore paying $30 per month. Since giving the tenant the notice of maximum rent of $34.50 above mentioned, the landlord has discovered that the emergency rent for the subject accommodations was $32 prior to the '' general 15% increase '' recently permitted by the Legislature. This proceeding is based upon the alleged nonpayment of a rental including both the additional $2 and the 15% '' general increase.''

In answer to a direct question put to landlord's witness (and attorney), the witness stated that the occupancy was a monthly tenancy. Neither the pleadings nor the proof indicate that any notice other than the demand above referred to and which is now marked as a Landlord's Exhibit, was ever served upon the tenant.

Simply put, this is the question: Is a thirty days' notice pursuant to section 232-a of the Real Property Law necessary as a preliminary to the commencement of summary proceedings for the nonpayment of the $2 and/or 15% increase permitted by the State Residential Rent Law of the State of New York, as amended by chapters 320 and 321 of the Laws of 1953, in the case of a monthly tenancy?

The general impression prevalent in the mind of much of the Bar that there is a difference between a thirty days' notice to terminate a monthly tenancy (Real Property Law, § 232-a) and a thirty days' notice to increase rental, is hardly supported by any competent authority called to my attention. This misconception arises from the practical application of a thirty days' notice prior to the intervention of the '' Emergency Statutes ''

to effectuate an increase in rent. Actually this step was the only way to terminate the existing monthly tenancy to make way for a new agreement at a higher rental. By then incorporating a demand for a higher rental in the thirty days' notice, the landlord in effect said: I am terminating our existing agreement and I offer you an opportunity to stay if you will agree to a new contract calling for a higher rental per month.

Nothing in the emergency statutes may be construed as abolishing monthly tenancies. These always did and still rest on an agreement between the landlord and the tenant. The intervening emergency statutes suspend the possessory right of the landlord, it is true, but they do not *ipso facto* change a monthly hiring into a statutory tenancy. Once a thirty days' notice pursuant to section 232-a of the Real Property Law is properly served, the legal result will be that a monthly tenant becomes a statutory tenant and liable for any increase permitted by the statute without more notice than a simple demand.

But where as is here conceded by the landlord the tenancy was a monthly one, in the absence of a termination of the original agreement as above indicated, the demand for a higher rental is premature.

This conclusion is applicable equally to the $2 difference which the landlord may have been entitled to prior to the new amendments and to the 15% increase now authorized by law. '' That monthly tenants are entitled to thirty days' notice required by section 232-a of the Real Property Law is not questioned.'' (*Lewittes & Sons* v. *Spielmann,* 190 Misc. 35, 36.)

By saying that a tenant who held over after the expiration of his last lease (during the emergency '' period '') '' he is no longer a tenant at will or by sufferance, *nor is he a month-to-month tenant* * * * *His occupancy* * * * *was not under any agreement express or implied* but by virtue of a compulsion exerted on the landlord by the local emergency rent law '' and was a statutory tenant not entitled to notice of termination of tenancy, the Court of Appeals in *Whitmarsh* v. *Farnell* (298 N. Y. 336, 343, 344), affirmed by exclusion, the existence of month-to-month tenancies as such, and ruled only on expired fixed terms. (Italics ours.)

I find it difficult to follow the reasoning of the learned Justice in the much discussed case of *Graf* v. *Miller* (202 Misc. 887). It seems to me that he is confusing a fixed term of occupancy with an agreement for a *continuing* one — a tenant for one month with a monthly tenant. While it is true that the distinction seems to be abolished for the purpose of notice of termination

under the Real Property Law, they are not the same thing. The one is definitive as to time — the other does not end " at the end of any one month ". If the landlord seeks the latter's termination, it will end only at the end of the month specified by him in his thirty days' notice prescribed by the law.

Assuredly the termination of a fixed term brings into effect a statutory tenancy during the continuance of the " Emergency "; not so, in the case of a continuing term such as is here indicated.

All of us may read with profit the scholarly and convincing letter of Benjamin J. Taruskin, Esq. (N. Y. L. J., April 8, 1953, p. 1150, col. 2). I believe his summary on this point correctly states the law.

In view of the foregoing, until the original tenancy is terminated as indicated, the landlord is entitled only to the rental of $30 per month. The Clerk is directed to pay to said landlord out of the funds on deposit, the sum of $60 to cover the two months beginning July 15th and ending September 14, 1953. The balance is to be returned to the tenant. This is a practical disposition of the deposited funds, wholly unnecessary to the decision in the proceeding which is, that the petition is dismissed on the law and on the facts.