Arthur Wachtel, J.
This is a holdover proceeding where the landlord seeks to evict the tenant upon the ground that the occupancy of the tenant is contrary to the terms of the lease under which the tenant originally came into possession and is illegal because of the requirements of law “ in that the tenant has unreasonably refused the landlord access to said housing accommodations for the purpose of making the necessary repairs required by law and the landlord is subject to civil or criminal penalties therefor or both.” The tenant entered occupancy of Apartment 0, a three-room apartment of the premises, on August 14, 1942, pursuant to a lease with the previous landlord. Thereafter, in 1955, he entered into a lease of Apartment D, a two-room apartment adjoining Apartment 0. The tenant and the then landlord agreed to make an opening so as to connect the two apartments. The kitchen sink and gas range were removed from Apartment D and the tenant continued to occupy both apartments as one apartment. This resulted in a decrease in the number of apartments from 76 to 75. After the present landlord took title, it received a notice from the department of housing and buildings about October 31, 1956, of violation of sections 218, 300 and 301 of the Multiple Dwelling Law and ordering the landlord to ‘ ‘ Restore to original condition or file plans and application with this Department for approval to legalize said alterations.” A proceeding in the Magistrate’s Court brought by reason of these alleged violations has been dismissed. Another proceeding is now pending.
The landlord’s contention is that it is desirous of restoring Apartments C and D to their original condition and that it is ready, able and willing to close up the opening between the two apartments and restore the original two separate units. The tenant contends that the occupancy is not, in itself, illegal but may be legalized by the filing of appropriate plans. The landlord replies that to file plans would be too costly; it would entail an expense of about “ a thousand dollars or so ” and that it would have trouble with the mortgage because of the change; that a five-room apartment is harder to rent than a two or three-room apartment. There is no proof as to what is the contrasting expenditure of sealing the wall to restore the original condition. While it is true that the present landlord was not a party to the *668 alteration, the fact remains that the said alteration was the result of an agreement between the predecessor landlord and the tenant and that the certificate of occupancy was for 76 apartments, not 75, and that the alteration of two separate units into one was, if not actually known, easily ascertainable. The landlord inspected the premises and its bookkeeper-secretary, who had previously been employed by the prior landlord, testified as to separate rentals for each unit.
Certainly, if the predecessor landlord had sought an eviction of this tenant by reason of the violation, a proceeding brought by such landlord would be dismissed under the authority of 816 Fifth Ave. v. Purdy (127 N. Y. S. 2d 695) and H. Casabianca, Inc. v. Connobbio (205 Misc. 380, 383). “ The mere existence of á violation, however, in and of itself does not entitle the landlord to an order of dispossession ” under subdivision 3 of section 52 of the State Rent and Eviction Regulations. The facts and circumstances in each case must be considered to determine whether the court should grant a final order under subdivision 3 of section 52. (H. Casabianca, Inc. v. Connobbio, supra.) The Administrator has, by a recent opinion, issued on August 31, 1956 (Opinion No. 114), declared that in these cases a proceeding should be brought before the rent commission for the issuance of a certificate under section 54 so that if a certificate is issued, appropriate provisions may be made for the protection of the tenants.
The contention that the tenant may not dictate to the landlord what he shall do with his property is not in point. The question is whether the rent control law requires a specific procedure before a tenant may be evicted. “ The primary aim of the act referring to housing accommodations is not to prevent landlords from making a profit by commercial use of their properties, but to protect tenants from eviction at a time when because of the housing shortage it is difficult, if not impossible, for them to get another place to live.” (Suppus v. Bradley, 278 App. Div. 337, 338-339; cf. Matter of Various Tenants of 149 East 48 St. v. Weaver, 5 Misc 2d 269.) There is no question of danger to health or safety involved in this case.
The court believes that the best procedure should be to permit the Administrator to entertain an application in this type of case for a certificate of eviction and if a certificate is issued, to impose such conditions as may be proper in accordance with section 54 of the State Rent and Eviction Regulations.
Accordingly, petition dismissed without prejudice.