Harold Birns, J.
Petitioner seeks an order evicting tenant from her living accommodations on the penthouse floor of No. 30 Fifth Avenue, Manhattan. The petition rests upon a claim that the continuing occupancy of the premises by respondent *81 is illegal. This assertion in turn is founded upon a notice of violation filed by the Department of Buildings on November 21, 1966, reading, as far as pertinent, as follows: “ 5. The servants’ rooms in the penthouse have been changed to apartments. C26-185. ” * *
“ 5. Bestore to lawful use or obtain new certificate of occupancy. ” Bespondent contends that said violation “ should ” not be permitted to disturb her tenancy.
The respondent has been occupying certain rooms on the penthouse floor since 1944, designated in her lease as “ rooms 8 and 9 Burn. * * * ”, for which the rental was established at the time at $462 per annum.
It appears that two rooms were made into one 18 feet long by 11 feet wide and were used by respondent as her living quarters. This room contains a “ hot plate” but no other kitchen paraphernalia. The bathroom facilities, used by respondent, are not located within her rooms but are entered only by traversing the public hall on said penthouse floor. This bathroom contains the usual sanitary facilities.
The first certificate of occupancy for this apartment building was issued in 1923. It classified the building as a “ tenement house ” of 14 stories and penthouse. In 1956 a new certificate of occupancy was issued which classified the building as a “ class A ’ ’ multiple dwelling and in particular described the penthouse as containing “ two (2) apartments and fourteen (14) servants’ rooms ”.
It is the claim of respondent that her tenancy was lawful from its inception; that the act of a previous landlord in applying for the new certificate of occupancy which classified her rooms as servants’ rooms made her occupancy illegal and that under those circumstances her present landlord has a legal duty to correct the violation so as to retransform her occupancy into a legal one.
The present classification of respondent’s quarters as “ servants’ rooms ” is of critical significance in the determination of this matter. While this term does not appear in our Multiple Dwelling Law, the Multiple Dwelling Code, or the Administrative Code of the City of New York, synonymous language can be found in the Tenement House Law of 1909 [L. 1909, ch. 99, as amd., repealed by L. 1952, ch. 798].
The said Tenement House Law of 1909 provided for the factors to be considered in limiting the heights of tenements permitted to be built on city streets. Under that statute measure *82 ments were permitted to be taken from the curb level to the top of certain superstructures and penthouses. It provided that “ Such pent houses shall not be used or rented as apartments, but their use shall be limited solely to laundry and store room purposes, and to servants’ and janitors’ quarters. ” (Tenement House Law of 1909, § 51, as amd. by L. 1912, ch. 454.)* Permitting such use of penthouses for servants indicated a concern for those members of an affluent society who employed servants in their apartments but did not wish them to reside too closely, namely, within the apartment, or too far away, namely, outside the building. It is clear that at that time such quarters were not considered as apartments for the use of rent-paying tenants. Servants’ quarters thus appeared to be an extension of the tenants’ apartments within which servants were employed in the same building.
Today, apartments for tenants are permitted on penthouse floors (Multiple Dwelling Law, § 211). This latter section apparently superseded the section of the Tenement House Law referred to above, so that restrictions on the use of penthouses for apartments have been eliminated. Nevertheless, quarters for servants are recognized under current statutes although not contained in an apartment itself. Support for this conclusion may be found in the Multiple Dwelling Law, which provides that rooms used ££ exclusively by persons employed by the tenants ” are to have available and accessible certain “ water closet accommodations ” (Multiple Dwelling Law, § 76, subd. 1 par. 1). Thus this section is traceable to the decade when architects and engineers designed buildings not only for tenants but for tenants who employed servants. If the rooms now occupied by respondent were occupied by a servant, such occupancy would not violate present-day statutes; but it is not claimed that the respondent herein was over an employee of a tenant in the building. Hence, her occupancy appears to have been unlawful at its inception.
Under the Multiple Dwelling Law, a “ class A” building is a multiple dwelling occupied as a rule for ‘£ permanent resident purposes ” and includes ££ maisonette apartments * * * bachelor apartments, studio apartments ” among others. A “ class A” building may not include those facilities found in a ££ class B ” multiple dwelling (Multiple Dwelling Law, § 4, subd. 8, par. a).
*83 An apartment is “ that part of a multiple dwelling consisting of one or more rooms containing at least one bathroom * * * which room or rooms are separated or set apart from all other rooms within a multiple dwelling” (Multiple Dwelling Law, § 4, subd. 15).
Thus the living quarters of the respondent do not constitute an apartment as defined, inasmuch as her bathroom is not contained within the room or rooms she uses. Her quarters resemble a room found in a rooming house, which is a “ class B ” occupancy. But a “class A” building may not include those facilities permitted in a “class B ” building (Multiple Dwelling Law, § 4, subd. 8, par. a).
It is immaterial that the landlord applied for a new certificate of occupancy in 1956. As noted, the tenancy was illegal at its inception. Ho vested right was created. That the violation under discussion was not discovered and recorded until after the passage of 22 years does not serve to validate it. Hence the analogy sought to be applied by respondent to certain zoning cases wherein a prior nonconforming use survives a later change in the zoning law is inapplicable, for in such cases the prior use was legal when created (People v. Miller, 304 N. Y. 105; Town of Somers v. Camarco, 308 N. Y. 537; 2 Rathkopf, Law of Zoning and Planning, ch. 58). In fact, the zoning resolution makes provision for the continuation of an existing legal nonconforming use (Zoning Resolution, § 52-11).
The respondent, however, claims that petitioner can correct the violation, if any is found to exist, by blocking off the public corridor so that respondent would have private access to the bathroom facility and thereby her quarters would become a legal apartment (see Multiple Dwelling Law, § 4, subd. 15).
In this respect, the case at bar is unlike the case of Casabianca, Inc., v. Connobbio (205 Misc. 380), relied upon by respondent. In the latter case it was a subsequent amendment to the Multiple Dwelling Law (§ 250), requiring the installation of a water closet within the apartments of tenants, which brought about the existence of the violation that the landlord was charged by law to correct. In Casabianca the tenancy was not illegal at its inception as was the tenancy here.
An examination of the plans of the said floor, as supported by testimony elicited at the trial, establishes that such blockage would prevent continuous passage from one side of the penthouse floor to the other and thus create another violation of law in its place (Multiple Dwelling Law, § 102, subd. 3; § 107).
Bespondent points to a notice of maximum rent from the Office of Price Administration as of March 1, 1943, wherein *84 the rent was established at $35- per month, and which notice reflected that toilet, bathroom and cooking facilities were then provided to the tenant. However, the setting of a maximum legal rent does not have the effect of validating accommodations which are in violation of the Multiple Dwelling Law (cf. New York City Charter, § 644, with L. 1946, ch. 274, § 1, as amd.).
After 22 years, it appears unfair to disturb a tenancy, but there appears to be no statute or ordinance which affords the respondent relief. Accordingly the petition is granted.

 In 1926 this section was modified by striking out the said sentence so that from then bn apartments could he located on penthouse floors (Tenement House Law of 1909, § 51, amd. by L. 1926, ch. 176).