LUCIA S. TOMPKINS, Landlord, Respondent, *v.* BENJAMIN KORNFELD, Tenant, Appellant.

Supreme Court, Appellate Term, First Department, February 20, 1946.

*Benjamin Heller* for appellant.

*Bernard Lefkowitz* for respondent.

HAMMER, J. The petition alleges the expiration of the tenancy, the holding over by the tenant without permission, the service of notice terminating the tenancy " because said tenancy constitutes a violation of the rules and regulations of the department of housing & buildings "; further, that a certificate has been duly issued by the Office of Price Administration and the ten days' notice provided by the rent regulation (Rent Regulation for Housing in New York City Defense-Rental Area, § 6, subds. [b], [d]; 8 Federal Register 13918) given.

The tenant answered by general denial; that the landlord made the alterations in the building without the permission from the Department of Housing and Buildings, that the violation was committed solely by the landlord, and that no certificate has been issued by the Office of Price Administration.

The case was submitted on the following stipulated facts: "On or before December 16, 1943, the building owned by the landlord was a two-family dwelling. The landlord and her family occupied the first and second floors of the building as one unit. On December 16, 1943, the tenant took possession of the apartment on the third floor of the building under a written lease for a term ending September 30, 1945, at a rental of $75. per month. The tenant is still in occupation of the said apartment and has paid each month's rent as it fell due. In December, 1944 and in April or May, 1945, the landlord caused alterations to be made in the building for the accommodations of two additional families, one on the second floor and one on the fourth floor. Thereafter the apartments on the second and fourth floors were rented to two other tenants who occupied the same. The fourth floor apartment was rented to Lieutenant Frank J. Payne and Elizabeth M. Payne From January 15, 1945 to September 30, 1946, at an annual rental of $1080. Subsequent to the receipt of the violations and by mutual consent the tenant was released from his lease and the apartment is now vacant.

"The apartment on the second floor was leased to Chapman D. Marks on May 15, 1945 for the term commencing June 1, 1945 to September 30, 1946, at an annual rental of $1500.

"No certificate of occupancy had been obtained to operate as a multiple dwelling. On or about July 10, 1945, the Department of Housing & Buildings caused the following violation to be filed against the building:

"'IN VIOLATION of Sections 8, 170, 300 and 301 of the Multiple Dwelling Law, the above building has been converted to a Multiple Dwelling, and is now occupied and being maintained as such without a certificate having been issued by this Department.

"'Restore the premises to its original lawful occupancy or make said premises conform to the requirements of the Mulitple Dwelling Law, subject to and under a permit issued by this Department.'

"In August, 1945, the landlord served upon the tenant a notice to terminate the tenancy on September 30, 1945, the date of its termination as per the lease. A copy of said notice which was given, as required, to the O.P.A. Area Rent Office, is attached hereto. There is also attached hereto copy of communication received from the O.P.A. Area Rent Office. The summary proceeding herein for the tenant's removal as a holdover was instituted upon a petition which alleges as the ground

for the tenant's removal the same ground set forth in the notice to terminate the tenancy. The pleadings are hereto annexed.

" Additional testimony is to be adduced at trial by landlord as to nature of additional requirements to eliminate violation and her financial condition and any other facts required to amplify the foregoing."

No additional testimony was furnished by the landlord.

In the notice to terminate the occupancy, made a part of the petition, it is stated that " the reasons for the eviction are the Department of Housings [*sic*] and Buildings of the City of New York has stated that the building is occupied by more than two families which is the maximum allowed and that this constitutes a violation which the landlord must remove by reducing the number of tenants to the amount permitted by law. The tenants [*sic*] occupancy must be terminated to remove the violation."

While the petition is on its face sufficient because of the allegation therein that a certificate has been obtained for the tenant's eviction, the issuance of a certificate by the administrator is not stated in the agreed facts, and it must accordingly be assumed that no certificate was given by the administrator. In respondent's brief the letter of the Office of Price Administration dated August 24, 1945, is referred to as " the certificate of August 24, 1945." On its face however the paper referred to is a mere letter, not a certificate provided for by paragraph (1) of subdivision (b) of section 6 of the Regulation (8 Federal Register 13918).

The landlord was thus required to show that the case comes within the six exceptions authorizing the tenant's eviction. Clearly this is not one of the exceptions. The landlord does not seek repossession for the purpose of making alterations in accordance with plans filed with and approved by the Department of Housing and Buildings.

Moreover, by section 261 of the Multiple Dwelling Law, entitled " Recovery of possession of certain non-complying premises restricted during emergency period " (as amd. by L. 1945, ch. 880, eff. April 19, 1945, prior to the beginning of this proceeding) it is, in view of the existing public emergency caused by the housing shortage, provided (§ 261, subd. 2) that: " For the period during which any old-law tenement house or any converted dwelling [the building as occupied in this instance being a converted dwelling as defined by subdivision 8 of section 4 of the statute] shall fail to comply with the applicable

provisions of articles six and seven of this chapter, no action or proceeding by a landlord to recover possession of such premises or any portion thereof from a tenant and to remove such tenant therefrom for the reason that the tenant holds over and continues in possession of the demised premises or any portion thereof after the expiration of his term without the permission of the landlord, shall be maintainable except (a) a proceeding to recover such possession upon the ground that the person is holding over and is objectionable, in which case the landlord shall establish to the satisfaction of the court, that the person holding over is objectionable; or (b) a proceeding when the owner of record of the building, being a natural person, seeks in good faith to recover possession of a room or rooms therein for the immediate and personal occupancy by himself and his family as a dwelling; or (c) a proceeding where the petitioner shows to the satisfaction of the court that he desires in good faith to recover premises for the purpose of demolishing the same with the intention of constructing a new building, plans for which new building shall have been duly filed and approved by the proper authority.''

This being a summary proceeding to evict the tenant on the expiration of his term it follows that notwithstanding noncompliance with the requirements of the Multiple Dwelling Law applicable to converted dwellings such a proceeding is not maintainable, unless the case comes within the exceptions provided for in subdivision 2 aforesaid, and none of the exceptions is applicable in this instance.

It is notable that while the preamble in subdivision 1 of section 261 states that the purpose of a prior statute, chapter 675 of the Laws of 1938, and section 260 of the Multiple Dwelling Law is to prevent rental increases of dwelling houses occupied by low-income families, the provisions of subdivision 2 of section 261 before quoted apply to '' any converted dwelling ''.

It may be added that to permit eviction in this case would be to deprive this tenant, in lawful occupation of his apartment since December, 1943, at a rental of $75 a month, of possession, and allow a tenant who took possession of an illegally maintained apartment in the building for the term from June 1, 1945, to September 30, 1946, at an annual rental of $1,500, $50 a month more than this tenant is paying, to remain undisturbed.

The occupancy of the tenant-appellant was part of and in accordance with the '' original lawful occupancy '' approved by law and the Department of Housing and Buildings. The occupancy of the additional tenant was a violation of law which

that department's directive " Restore the premises to its original lawful occupancy or make said premises conform to the requirements of the Multiple Dwelling Law subject to and under permit issued by this Department " required the owner to remove. The occupancy of tenant-appellant was protected by the Office of Price Administration's rent regulation and the Multiple Dwelling Law. He was a statutory tenant. If removal of said tenant can be accomplished by this proceeding the violation has become a virtue, the Office of Price Administration regulation and section 261 of the Multiple Dwelling Law are circumvented and the owner-landlord has succeeded in evicting a statutory tenant, and obtaining higher rent from one illegally put into possession. Such an unjust result is repugnant to justice and intolerable. Clearly the original lawful occupancy can be restored only by removing the unlawful occupancy. It must be held that the appellant's lawful occupancy has remained unaffected by the unlawful acts of the owner-landlord which violated the Multiple Dwelling Law.

In the absence of a certificate by the administrator it was improper to grant the final order here.

In the summary proceedings on violations upheld by this court in decisions cited by the landlord (*Monterey Apts.* v. *Burt,* 183 Misc. 1060; *Six-Ten Corporation* v. *Oppell,* 186 Misc. 628) it does not appear that the buildings were converted dwellings or old-law tenements; and those proceedings were brought prior to the effective date of section 261 of the Multiple Dwelling Law. *Dombroff* v. *Gillman* (186 Misc. 629) also cited by the landlord, was a case of factory use.

The final order should be reversed, with $30 costs, and final order directed for the tenant, with costs.

SHIENTAG and HECHT, JJ., concur.

Order reversed, etc.