In the Matter of Morris Levine, Respondent, against Maurice Finkelstein et al., Constituting the Temporary City Housing Rent Commission of the City of New York, Appellants.

First Department, February 14, 1949.

*I. Stanley Stein* of counsel (*Paul Wolfe,* attorney), for respondent.

*Sidney P. Nadel* of counsel (*Joseph Goldberg* and *Joseph Jay* with him on the brief; *Nathan W. Math,* attorney), for appellants.

DORE, J.   The Temporary City Housing Rent Commission of the City of New York appeals from two orders of Special Term, made in an article 78 proceeding, annulling the commission's refusal to issue certificates of eviction respecting certain single-room occupants of an old-law tenement and directing the commission to issue such certificates.   Single-room occupancy is defined as " occupancy by one or two persons of a single room, or of two or more rooms which are joined together, separated from all other rooms within an apartment in a.multiple dwelling, so that the occupant or occupants thereof reside separately and independently of the other occupant or occupants of the same apartment " (Multiple Dwelling Law, § 4, subd. 16).

In August, 1946, the landlord herein purchased the premises in suit, 1660 Monroe Avenue, Bronx, New York, a Class A old-law tenement, containing nine apartments.   Of these, six were rented on a family unit basis, and are not in question.   The apartments affected by the orders appealed from are the remaining three apartments, two of five rooms each and one of six rooms, located on the first and second floors.   For years before the present landlord took title these three apartments had been rented at specified monthly rentals to individual tenants for single-room occupancy, some furnished, others unfurnished. They were designated apartments 1A, 1B, 1C, etc., and were originally twelve in number.   Upon taking title, the present landlord operated the premises including the three single-room occupancy apartments in the same manner as the prior landlord; and in October, 1946, he rented one of the furnished rooms to a war veteran and his wife.

On February 15, 1947, the department of housing and buildings placed the following violation on the premises: " ' Apartments subdivided and now used for single room occupancy without obtaining a Certificate of Occupancy: 1st story north Apt. #2; 1st story south Apt. #1; 2nd story south Apt. #3.   File

plans to legalize or restore to former legal occupancy.' '' The landlord thereafter continued to operate the premises without change until November 5, 1947, when he filed with the commission ten separate applications for certificates of eviction seeking to remove the fourteen persons then occupying the sixteen rooms within the three apartments in question, on the ground of illegal occupancy as evidenced by the above violation. The department of housing and buildings reported to the commission that there were violations pending constituting "Safety hazards" which required eviction of the tenants, and that the premises were illegally occupied as single-room occupancy (see Multiple Dwelling Law, § 248).

Section 248 in seventeen separate subdivisions provides numerous requirements that must be complied with to legalize single-room occupancy. The landlord speaks generally about a claimed enormous expense (between $8,000 and $10,000) of installing a sprinkler system; but no facts are shown to indicate that the installation of a sprinkler system was necessary, and no competent proof whatever is adduced to show the cost thereof. Nor is there any statement of facts to show that there were not appropriate means of exit. Indeed, as distinguished from general conclusory statements about single-room occupancy, safety and fire hazard, this record does not clearly present the specific state of facts showing in what precise way the premises in question were illegally occupied because of failure to comply with any particular one of the seventeen subdivisions of section 248.

The tenants in their answers filed with the commission showed they had occupied their rooms for years and that the landlord after taking title had continued to operate the premises in the same manner as the prior landlord for fifteen months before he filed his application and had even rented rooms for single-room occupancy in said apartments to new tenants. Some of the tenants expressed a willingness to occupy an entire apartment if permitted to remain in possession. The claim was also made that the landlord sought rental increases and was not acting in good faith.

The commission denied the landlord's applications on the ground that the facts did not entitle him to eviction certificates. The landlord then applied for reconsideration, claiming the department of housing and buildings threatened criminal prosecution if he did not remove the violation. Thereafter on March 30, 1948, the commission held a hearing. The hearing officer

found that at such time there were not more than four people in any one of the three apartments in question, and that the landlord could easily remove the violation by permitting one person or one couple to remain in each apartment as prime tenant with the right to take in not more than four others as roomers, as expressly permitted by law (Multiple Dwelling Law, § 4, subd. 5). This arrangement, satisfactory to the tenants, would not constitute " single room occupancy " as defined in subdivision 16 of section 4 of the Multiple Dwelling Law. Accordingly, the commission affirmed the orders denying eviction certificates.

On May 22, 1948, the landlord filed in the Supreme Court the petition herein for review under article 78 of the Civil Practice Act. Thereafter, before answer, the commission invited landlord and tenants to a further hearing, scheduled for July 7, 1948. The landlord's attorney in advance of the hearing wrote the commission a letter stating that the landlord refused to attend the hearing and set forth the reasons alleged for such refusal. The tenants, however, attended the hearing held on July 7th. The hearing officer found that the tenants were agreeable to being relocated within the three apartments in such manner that the apartments could be occupied on an apartment unit rental basis so as not to constitute single-room occupancy. This would be accomplished by one family unit consisting of husband, wife and the wife's father taking one of the three apartments; another tenant, mother and daughter, taking over the second apartment and taking in two roomers; and another tenant taking over the third apartment in which the remaining three roomers would be taken — all without violation of law.

After the commission's answer had been filed and argument on the petition had been heard by Special Term on July 16, 1948, the learned court by order dated July 28, 1948, annulled the commission's determination and directed issuance of certificates against five tenants (eight persons) but granted the landlord leave to move on further proof for reargument as against the remaining five tenants (six persons) on the question of the timeliness of the petition within the four-month limitation under article 78 (Civ. Prac. Act, § 1286). The landlord so moved as to four of these tenants (five persons), one tenant having moved out of the premises. Upon the reargument, the commission conceded the timeliness of the proceedings as against two of the four remaining tenants, and by order dated September 27, 1948, entered October 7, 1948, the court dismissed the petition as to two tenants (three persons) because the proceed-

ing had not been commenced within the statutory period, but granted the relief asked in the petition as to the two other remaining tenants.

In an opinion, the learned court held it was the landlord's duty, after due notice of the violation from the department of housing and buildings, to remove the tenants, on the ground that their occupancy was in violation of law, citing *Six-Ten Corp.* v. *Oppell* (186 Misc. 628 [App. Term, 1st Dept.], June 25, 1945; *Wack* v. *Boutin* (N. Y. L. J., June 23, 1947, p. 2471, col. 7 [App. Term, 2d Dept.]). In *Six-Ten Corp.* v. *Oppell* (*supra*) there was no proof that the buildings were converted dwellings or old-law tenements, and the proceedings therein were brought prior to the effective date of section 261 of the Multiple Dwelling Law (see *Tompkins* v. *Kornfeld,* 186 Misc. 464, 469). In *Wack* v. *Boutin* (*supra*) the court cited and relied on *Six-Ten Corp.* v. *Oppell* (*supra*).

The commission appeals from the whole of the first order and so much of the second order as grants the petition against the two other tenants. The landlord does not appeal. The service of the notice of appeal taken by a public officer on behalf of a domestic municipal corporation automatically stayed the execution of the orders appealed from without an undertaking or other security (Civ. Prac. Act, § 571). Accordingly, no stay by court order has been granted, no certificates have been issued, and the tenants are still in possession.

Two of the occupants affected by the first order have moved from the premises. Thus only so much of the two orders as directs issuance of certificates with respect to eight remaining occupants, is involved on this appeal. The three occupants against whom the petition was dismissed as not timely brought, are a family group consisting of husband and wife and the wife's father. The commission found that they are agreeable to renting one of the three apartments on a family unit basis. The commission also found that two other occupants, mother and daughter, are agreeable to renting another of the three apartments on such basis, taking in two other occupants as roomers; and that another tenant is agreeable to renting in the same way the third apartment, taking in the remaining three occupants as roomers.

The landlord in his verified petition avers that he brought the proceeding in good faith and for " no other purpose than to remove the violation ". The commission, however, found the landlord was not acting in good faith, and on this record it may not be said that finding was without basis. Without evicting

any of the present tenants, the landlord easily could restore the part of the premises in question to " family " occupancy and remove the violation. This would not oblige him, as he claims, to go into what he calls " partnership " with tenants. His renting on a family basis to the present tenants would be no more of a partnership than renting on such basis to other persons after the tenants now in possession had been evicted.

A " family ", as defined in the law, may rent out rooms to not more than four other people whether they be denominated " boarders ", " roomers ", or " lodgers "; but whether the family is one or two or more persons, it must maintain a " household ". The statute provides: " A ' family ' is either a person occupying a dwelling and maintaining a household, with not more than four boarders, roomers or lodgers, or two or more persons occupying a dwelling, living together and maintaining a *common household,* with not more than four boarders, roomers or lodgers.   *   *   * " (Multiple Dwelling Law, § 4, subd. 5.) (Italics ours.)   This connotes a more or less common use of an apartment as distinguished from exclusive occupancy of a room or rooms rented for " single room occupancy " as defined in subdivision 16 of section 4.   In short, the occupancy herein would be entirely legal if separate families, as defined in the statute, severally took one of the three apartments in question and let out rooms to not more than four roomers in such apartment provided the apartment was used as a common household, thus removing the basis for the violation.   In other cases, on facts analogous to those herein, the courts have sustained the commission's denial of landlords' applications for certificates of eviction (*Matter of White* v. *Ross,* 274 App. Div. 890 [2d Dept., 1948]; *Matter of Tynberg* [*Ross*], N. Y. L. J., Sept. 3, 1948, p. 365, col. 2 [Sup. Ct., N. Y. Co.]; *Houry* v. *Finkelstein,* N. Y. L. J., Nov. 10, 1948, p. 1109, col. 1 [Sup. Ct., Kings Co.]).

But that is not all.   The only ground this landlord asserted for removal of these occupants was the claimed illegality of the occupancy.   Section 261 of the Multiple Dwelling Law as amended in 1945 (L. 1945, ch. 880), entitled " Recovery of possession of certain non-complying premises restricted during emergency period ", was in effect when this landlord filed his applications.   By its terms it continues in force until July 1, 1949.   Subdivision 1 thereof declares that the public emergency previously declared in acts of the Legislature (cf. Multiple Dwelling Law, § 260) still exists and that the purposes of the emergency rent laws have been " circumvented " by landlords,

making necessary legislative intervention by the enactment of section 261. Subdivision 2 of section 261, then provides:

" 2. For the period during which any old-law tenement or any converted dwelling shall fail to comply with the applicable provisions of article six or seven, no action or proceeding by an owner to recover possession of such dwelling or any part thereof from a tenant and to remove such tenant therefrom for the reason that the tenant holds over and continues in possession of the demised dwelling or any part thereof after the expiration of his term without the permission of the owner, shall be maintainable except:

" a. A proceeding to recover such possession upon the ground that the person is holding over and is objectionable, in which case the owner shall establish to the satisfaction of the court that the person holding over is objectionable; or

" b. A proceeding when the owner of record of the dwelling, being a natural person, seeks in good faith to recover possession of a room or rooms therein for the immediate and personal occupancy by himself and his family as a dwelling; or

" c. A proceeding where the petitioner shows to the satisfaction of the court that he desires in good faith to recover the dwelling for the purpose of altering or demolishing the same with the intention of providing or constructing more dwelling units, plans for which shall have been duly approved by the department in accordance with the provisions of any applicable local law.

" d. In pending proceedings for the recovery of such dwelling on the grounds that the occupant holds over after the expiration of his term, a warrant shall not be issued unless the petitioner establishes to the satisfaction of the court that the proceeding is one mentioned in the exceptions enumerated in this subdivision."

Section 248 of the Multiple Dwelling Law is included within article 7 referred to in the above subdivision 2 of the act. A single-room occupancy in violation of section 248, therefore, appears to fall squarely within the express terms of that subdivision. As the property in question in concededly an old-law tenement, it is clear under the statute that a *landlord* may not remove single-room occupants therein except upon the limited grounds stated in the statute. None of such grounds is even claimed to be applicable in this case. It follows that during the declared emergency period such single-room occupancy, so far as a *landlord's right to evict* is concerned, cannot be regarded such an illegal use of the premises as would warrant the occu-

pants' removal by the landlord. To hold otherwise would defeat the purpose of the Legislature in enacting section 261. The Appellate Term, First Department, held to the same effect in cases involving analogous facts (*2025 Broadway, Inc.*, v. *Wolf*, 187 Misc. 1065 [1946], leave to appeal denied by this court N. Y. L. J., Jan. 25, 1947, p. 341, col. 2; *Guaranty Trust Co. of New York* v. *Nelson*, 189 Misc. 915 [1947], leave to appeal denied by this court N. Y. L. J., Oct. 16, 1947, p. 883, col. 1).

It should be noted that the restriction contained in section 261 is on the landlord owner and *not* on the department of housing and buildings or other governmental agency. In the event of unlawful occupancy of a multiple dwelling or any part thereof involving a genuine safety or fire hazard not curable except by eviction of the tenants, the department of housing and buildings may cause such building or such part to be vacated (Multiple Dwelling Law, §§ 302–309). This record fails to show that the department instituted any such proceedings in reference to the occupancy here in issue.

The legislative finding in subdivision 1 of section 261 is that the provisions of the emergency rent laws have " been circumvented by landlords ", requiring " legislative intervention ". It was for that reason the section was enacted expressly restricting such evictions to the stated, limited allowable grounds: viz., (1) that the tenant is objectionable, or (2) that the landlord seeks possession for personal occupancy, or (3) that he seeks possession to alter or demolish with the intention of erecting more dwelling units. The landlord's contention that the section is not here applicable because these are not " hold-over " proceedings is overruled. The applications herein were for eviction certificates authorizing the institution of summary proceedings under section 1410 of the Civil Practice Act on the ground that eviction of the tenants was necessary to remove the violation. Subdivision 5 of section 1410 gives as one basis for removal of a tenant by a landlord that the premises or a part thereof are used or occupied for " illegal business ". While not in form, nevertheless, in fact, the proceedings sought to be instituted against the tenants in the Municipal Court were in the nature of hold-over proceedings against tenants who, after the department of housing and buildings had placed the violation on the premises, continued without the permission of the owner (cf. Civ. Prac. Act, § 1410) to hold over and to remain in possession. Furthermore, the Legislature in enacting section 261 did not intend that a person whose term had *not* expired could be evicted after a violation under section 248 had been filed, whereas a person

whose term *had* expired could not be evicted for an identical violation.

The sole issue presented herein is whether the commission properly refused to issue the certificates of eviction. On the proof adduced in this record we held that the commission's determination was not illegal, arbitrary or capricious and should not have been annulled.

The two orders so far as appealed from should be reversed and the petition dismissed, with costs.

PECK, P. J., GLENNON and CALLAHAN, JJ., concur; SHIENTAG, J., dissents and votes to affirm.

Orders reversed and the petition dismissed, with $20 costs and disbursements to the appellants. Settle order on notice.