Callahan, J.
The defendants-appellants have been convicted for permitting single-room occupancy in a class A multiple dwelling in violation of law (Multiple Dwelling Law, § 248). This type of occupancy is defined as “* * * the occupancy by one or two persons of a single room * * * separated from all other rooms within an apartment in a multiple dwelling, so that the occupant or occupants thereof reside separately and independently of the other occupant or occupants of the same apartment. * * ®” (Multiple Dwelling Law, § 4, subd. 16.)
The building in question contains sixty-nine apartments and shelters 400 people. It appears that forty-four of the apartments are rented to three prime tenants, who sublet the rooms furnished and provide the customary utilities and some of the services usually supplied in a rooming house. The defendants-appellants are not only willing, but anxious to end the illegal *354 occupancy of the premises. Thus far, however, their every effort to dispossess the occupants in order to comply with the law has ended in failure.
It is conceded that the violations can be removed in either of two ways: (1) termination of the unlawful occupancy, or (2) alteration of the building.
The defendants-appellants gave notice to the prime tenants terminating their leases and obtained a certificate of eviction from the temporary city housing rent commission. This certificate, however, authorized the eviction of the prime tenants only, and not the removal of the subtenants or roomers. The landlord’s petition in the summary proceedings thereafter instituted was dismissed after trial in the Municipal Court. It was held, inter alia, that the possession of the prime tenants was protected by the Federal Housing and Bent Acts of 1947 and 1948 (IT. S. Code, tit. 50, Appendix, § 1899, subd. [a]). While the occupancy was recognized to be unlawful and prohibited by the Multiple Dwelling Law (§ 248), it was not regarded as ‘ ‘ illegal ’ ’ under the Federal statute aforesaid or within the intendment of the Civil Practice Act (§ 1410, subd. 5) authorizing the removal of tenants for illegal use or occupancy of the premises. It was also pointed out that the eviction of the prime tenants would effectually accomplish the dispossession of the subtenants or roomers. This, of course, would involve a circumvention óf the limitation or restriction in the certificate of eviction issued by the temporary city housing rent commission (see Broadway-Sheridan Arms, Inc., v. Phillips, 194 Misc. 35). The landlord’s appeal to the Appellate Term resulted in an affirmance of the final order dismissing the summary proceedings (194 Misc. 34), and this court denied leave to bring the case here for review (N. Y. L. J., March 1,1949, p. 750, col. 2).
The present occupancy of the premises is said to be hazardous. Since 1941 there have been twenty fires in the building. On one occasion two persons were found dead in one of the apartments. The department of housing and buildings advised the temporary city housing rent commission that the safety hazards in the premises required the eviction of the occupants. Nevertheless, a certificate to evict the subtenants or roomers was refused on the ground that this was unnecessary in order to cure the violations. The Supreme Court denied an application for mandamus to compel the issuance of a certificate extending to the subtenants or roomers.
The department of housing and buildings has the power to cause the vacating of any dwelling that constitutes a nuisance *355 (Multiple Dwelling Law, § 302). Any building that is dangerous to human life, or overcrowded, or not provided with adequate means of ingress and egress is a nuisance within the meaning of the statute (Multiple Dwelling Law, § 309). Though the department has certified to the existence of hazards and the necessity for evicting the occupants of the building, it has not seen fit to exercise its power to cause the premises to be vacated. Its reluctance is apparently dictated by consideration of the fact that the dislocation of 400 people would cause great hardship in the present housing shortage.
While it is possible to alter the premises so as to legalize the single-room occupancy, it is conceded that this can be done only at a cost in excess of $100,000. The defendants-appellants claim that the expenditure of this sum would be financially unwise, and that the property would not be a paying investment if altered to conform to the statutory requirements for occupancy of this type. In fact, they do not wish to continue such use of the premises, but seek to dispossess the occupants so as to convert the building into smaller apartments for legal occupancy. The cost of this alteration into smaller apartments would be much less than the expense of legalizing the present occupancy and result in a housing improvement preferable to the owner. The Magistrate, however, in convicting the defendants-appellants in this case took the position that the cost of the alteration to remove the violations caused by the single-room occupancy could not be considered. The defendants-appellants were told, in effect, that the present occupancy would have to continue at an expenditure of $100,000 to legalize the same as an alternative to conviction and sentence for violating the law. This ruling was made despite the fact that the owner had exhausted every lawful means of removing the occupants from the building and thus discontinuing the unlawful occupancy.
The extraordinary situation that exists in this case is undoubtedly due to the present housing shortage and an understandable desire on the part of the responsible governmental agencies to provide for the occupants of the building. It is questionable providence, however, to permit those living under such hazardous conditions as claimed to assume this risk to life and limb. If the danger is so great and threatening in this instance, it would seem to be the duty of the department of housing and buildings to take appropriate action and cause the premises to be vacated. Of course, the judicial branch of the government does not purport to exercise the discretion vested in the executive. It does, however, seek to protect the citizen from injustice. *356 It is plain justice that the department of housing and buildings with a plenary power and jurisdiction of its own should not bring a criminal prosecution for illegal occupancy against a landlord anxious to terminate the same, but who has been frustrated in every attempt to accomplish this end by recourse to the procedures of the law.
It is no answer to say that the building violations can be remedied, provided the owner will undertake the expense of alterations to legalize the present use of the premises. We do not conceive it to be the purpose of the Federal Housing and Rent Act of 1947 or the Multiple Dwelling Law, or the effect of their concurrent application to the situation in this case, to compel the continuance of a particular kind of occupancy against the wishes of an owner, with the making of extensive and economically improvident alterations as the only alternative to avoid a conviction for violating the law. This would border on confiscation. Yet it is precisely the result that has been reached here. In Central Savings Bank v. City of New York (279 N. Y. 266, on reargument 280 N. Y. 9, certiorari denied, 306 U. S. 661), it was said (p. 279): “ That the Legislature, in the interest of public health, safety and welfare, may require tenement houses to be constructed in a certain way and to be supplied with specified equipment, is beyond question. This court has held that so far as the owner is concerned, he cannot maintain the old style tenement house without compliance with this law. * * * The Legislature cannot, however, require or force an owner to use his property in a certain way or as a tenement or apartment. If the building is dangerous or unsuitable, the city, in the interest of the public health or welfare, may close it up or restrict its use, or even, where dangerous, demolish it; but it cannot compel the owner to keep it for a specific use.”
The Legislature during the present housing emergency has suspended the right of an owner to recover possession in cases of noncompliance with the statutory requirements for single-room occupancy in any old-law tenement or converted dwelling (Multiple Dwelling Law, § 261). For some reason, however, this limitation of the owner’s right to recovery of possession was not extended to a class A multiple dwelling, where the danger to life and property of the occupants would seem to be less by reason of better and more modern type of construction. In Matter of Levine v. Finkelstein (274 App. Div. 628, 636) we pointed out that: “ * * * the restriction contained in section 261 is on the landlord owner and not on the department of housing and buildings or other governmental agency. In the event of *357 unlawful occupancy of a multiple dwelling or any part thereof involving a genuine safety or fire hazard not curable except by eviction of the tenants, the department of housing and buildings may cause such building or such part to be vacated (Multiple Dwelling Law, §§ 3b2-309).”
We think that this statement points the way to solution of the problem arising from any illegal occupancy of the premises that amounts to an acute hazard. The department of housing and buildings, however, elected to institute the present criminal proceedings against the defendants-appellants instead of causing the building to be vacated in an appropriate action or proceeding for such purpose. The agencies of government have effectively combined in this case to compel the involuntary maintenance and operation of the building for the benefit of others at a cost and expense for legalization that the defendants-appellants are unwilling to assume, and which cannot lawfully be imposed upon them. They have vainly invoked the civil branch of the law to remedy the situation by evicting the occupants and thus terminating the unlawful occupancy of the premises. Thereupon the procedures of the criminal law have been set in operation to convict them for failing to do that which the civil branch of the law has prevented. Under these circumstances, we think that the convictions should not be permitted to stand. Accordingly, the judgments of conviction should be reversed, the fines remitted, and the informations against the defendants-appellants dismissed.
Peck, P. J., Glennon, Cohn and Van Voorhis, JJ., concur.
Judgments unanimously reversed, the fines remitted and the informations dismissed.